UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:25-cr-00157-05 |
| v. | (SAPORITO, J.) |
| DANIEL CHAVIS, a/k/a "Payne," | |
| Defendant. | |

## MEMORANDUM

This matter comes before the court on the defendant's motion to dismiss the indictment. Doc. 316. The defendant contends that the superseding indictment against him should be dismissed for violation of his speedy trial rights.

### A. Speedy Trial Act

The defendant's opening brief argues only that his statutory rights under the Speedy Trial Act have been violated by the delay in commencing his jury trial.

"The Speedy Trial Act requires that trial commence within seventy days of a defendant's initial appearance or of the filing and making public of the indictment, if later." *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993). In particular, the Act provides that:

the trial of a defendant charged in an information or

indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). Certain periods of delay are excluded in computing the time within which the trial must commence. As pertains to this motion, these excluded periods include:

(1) *Subsection (h)(1)(D) – delay resulting from pretrial motions.* "Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(D). "Any pretrial motion, including a motion for extension of time, is a pretrial motion within the meaning of [§ 3161(h)(1)(D)] and creates excludable time, even if it does not in fact delay trial." *Arbalaez*, 7 F.3d at 347; *see also United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014) ("[M]otions filed by [the defendant's] co-defendants requesting extensions of time to file responses and objections to pre-sentence reports, notices of unavailability, motions to continue status conferences, requests for hearings, and . . . a motion to extend the time to file pretrial

motions . . . served to toll the speedy trial clock for all defendants until the District Court held a hearing on the motions."). As the Third Circuit, sitting en banc, has explained:

> [S]ubsection [(h)(1)(D)] excludes time in two situations. First, if the court holds a hearing on the motion, all of the days between the filing of the motion and the conclusion of a hearing are excluded. Interpreting that provision, the Supreme Court has held that subsection [(h)(1)(D)] also excludes any time following the hearing that is required for filing briefs and additional materials necessary for proper disposition of the motion.
>
> Second, if the court does not hold a hearing, subsection [(h)(1)(D)] excludes the period from the filing of the motion until the parties complete the submissions necessary for the court to reach a decision.

*United States v. Felton*, 811 F.2d 190, 195 (3d Cir. 1987) (en banc) (citations omitted). Moreover, as the Supreme Court has commented:

> The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not. Moreover, subsection [(h)(1)(D)] does not require that a period of delay be "reasonable" to be excluded . . . .

*Henderson v. United States*, 476 U.S. 321, 326–27 (1986). "When calculating includable time, 'both the date on which an event occurs or a motion is filed and the date on which the court disposes of a motion are excluded.'" *United States v. Rodriguez*, 413 F. Supp. 3d 368, 373 (M.D.

- 3 -

Pa. 2019) (quoting *United States v. Lattany*, 982 F.2d 866, 872 n.6 (3d Cir. 1992)). Moreover, this court has previously held that "the time set aside by the Court for the preparation of pretrial motions is excludable from the Speedy Trial clock." *Id.* at 373–74 (collecting cases).

(2) *Subsection (h)(1)(H) – delay while proceeding is under advisement.* "Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." § 3161(h)(1)(H). "Pretrial motions are included within the scope of subsection [(h)(1)(H)]. *Felton*, 811 F.2d at 197.

(3) *Subsection (h)(6) – delay in multi-defendant cases.* "A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." § 3161(h)(6). The Third Circuit has recognized that, in enacting this provision, "Congress had desired to continue the preference for joint trials and had reaffirmed its intent that the joinder exclusion be expansively construed." *Felton*, 811 F.2d at 199 (internal quotation marks omitted). Thus, "subject to the reasonableness requirement, an exclusion

under subsection [(h)(1)(D)] applicable to one defendant would, by virtue of subsection [(h)(6)] be applicable to all his codefendants." *Id.* (internal quotation marks omitted); *see also Claxton*, 766 F.3d at 292 ("[U]nder this provision, and until severance is granted, an exclusion applicable to one defendant applies to all codefendants." (internal quotation marks omitted)); *Arbalaez*, 7 F.3d at 347 (holding that informal letter-request for continuance is treated as a pretrial motion for Speedy Trial Act purposes).

(4) *Subsection (h)(7)(A) – delay where ends of justice outweigh speedy trial interests.* "Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A).[1] "Case

---

[1] Any order, oral or written, granting a continuance under (7)(A) must expressly include the court's "reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(7)(A). Several factors that must be considered by the court in granting a (7)(A) continuance are set forth in § 3161(h)(7)(B). These

*(continued on next page)*

complexity is an acceptable reason for tolling Speedy Trial Act deadlines" under this provision. *United States v. Scarfo*, 41 F.4th 136, 176–77 (3d Cir. 2022) (finding open-ended, indefinite continuance appropriate in case involving thirteen co-defendants, dozens of charges, approximately one million pages of information, seven months of wiretaps and phone call recordings, and items seized from multiple locations, including data from sixty computers). An attorney conflict of interest necessitating substitution of counsel may also support the exclusion of a reasonable period of delay under this provision. *See United States v. Martinez-Zayas*, 655 F. Supp. 682, 685 (E.D. Pa. 1987) (finding 30-day continuance of trial

---

include: (a) whether failing to continue the matter would be likely to make continuing the proceeding impossible or result in a miscarriage of justice, § 3161(h)(7)(B)(i); (b) whether the case is so unusual or complex, due to the number of defendants, the nature of the prosecution, or the existence of novel factual or legal questions, that it is unreasonable to expect adequate preparation for trial within normal Speedy Trial Act time limits, § 3161(h)(7)(B)(ii); and (c) whether failing to continue the matter, in a case where (7)(B)(ii) does not apply, would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant continuity of counsel, or would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence, § 3161(h)(7)(B)(iv). (A fourth factor concerns pre-indictment proceedings only. *See* § 3161(h)(7)(B)(iii).) Finally, a continuance may not be granted under (7)(A) based on general congestion of the court's calendar, or the lack of diligent preparation by the Government. § 3161(h)(7)(C).

excludable under this provision because appointment of new counsel "made it impossible for defendant to proceed to trial immediately" as "new counsel require[d] time to prepare this case," and noting that "proceeding immediately would have operated to deprive defendant of her right to counsel").

This defendant, Daniel Chavis, made his initial appearance in this case before a federal magistrate judge on October 30, 2025, at which time the statutory speedy trial clock began to run for Chavis.

At the time of Chavis's initial appearance, a motion to continue by his co-defendant, Reneard Harris, was pending. That motion was granted on November 4, 2025. Under (h)(1)(D) and (h)(6), this period from October 30, 2025, through November 4, 2025, is excludable time.

On November 4, 2025, the court entered a scheduling order setting a January 23, 2026, pretrial motion deadline and a March 16, 2026, jury trial date. Under (h)(1)(D) and *Rodriguez*, 413 F. Supp. 3d at 373–74, the time period from November 4, 2025, through January 23, 2026, is excludable time. Moreover, the scheduling order also expressly found that the ends of justice served by the continuance outweighed the speedy trial interests of the public and the defendants, making the entire period

- 7 -

through the March 2026 trial date excludable under (h)(6) and (h)(7)(A).[2]

On January 22, 2026, Chavis himself filed a motion to continue, which was granted on February 2, 2026. That order set an April 6, 2026, pretrial motion deadline and a June 26, 2026, jury trial date. Under (h)(1)(D) and *Rodriguez*, 413 F. Supp. 3d at 373–74, the time period from January 22, 2026, through April 6, 2026, is excludable time. Moreover, the scheduling order also expressly found that the ends of justice served by the continuance outweighed the speedy trial interest of the public and the defendants, making the entire period through the June 2026 trial date excludable under (h)(6) and (h)(7)(A).[3]

On March 9, 2026, Chavis filed the instant motion to dismiss for

---

[2] We reached this finding that the ends of justice served by granting the requested continuance outweighed the best interests of the public and the defendant in a speedy trial after considering the several factors set forth in 18 U.S.C. § 3161(h)(7)(B), including the complexity of this case due to the number of defendants—nine at the time—and the nature of the prosecution, which made it unreasonable to expect adequate preparation for trial as previously scheduled.

[3] We reached this finding that the ends of justice served by granting the requested continuance outweighed the best interests of the public and the defendant in a speedy trial after considering the several factors set forth in 18 U.S.C. § 3161(h)(7)(B), including the complexity of this case due to the number of defendants—six at the time—and the nature of the prosecution, which made it unreasonable to expect adequate preparation for trial as previously scheduled.

violation of his speedy trial rights. After the parties filed briefs in support, in opposition, and in reply, the court held a hearing on the motion on June 17, 2026. At the hearing, counsel for Chavis requested leave to file a supplemental or amended reply brief, which was granted. On June 25, 2026, Chavis filed his amended reply brief. Under (h)(1)(D) and (h)(1)(H), the time period from March 9, 2026, through July 27, 2026, is excludable time.

On May 6, 2026, defense counsel for Chavis, Curt M. Parkins, Esq., filed an unopposed motion to withdraw based on a newly developed conflict of interest. On May 7, 2026, that motion was granted. On May 11, 2026, substitute counsel was appointed to represent Chavis, Cornelius J. Rotteveel, Esq.

Shortly after his appointment, Attorney Rotteveel learned of a conflict of interest due to his representation of another client. While the other client was willing to waive the conflict, Chavis was not. On May 27, 2026, Attorney Rotteveel filed a motion to withdraw based on this conflict of interest. On May 29, 2026, that motion was granted. On June 3, 2026, less than thirty days before trial was scheduled to commence, substitute counsel was appointed to represent Chavis, Kyle W. Rude, Esq.

At the June 17, 2026, motions hearing, the court sua sponte raised the issue of a continuance of the pending jury trial and, after stating its findings and rationale, advised the parties that the jury trial would be continued. On June 18, 2026, the court entered a written order continuing the jury trial until August 27, 2026. In doing so, the court expressly found that the ends of justice served by the continuance outweighed the speedy trial interest of the public and the defendants, making the entire period through the August 2026 trial date excludable under (h)(6) and (h)(7)(A).[4]

---

[4] We reached this finding that the ends of justice served by granting the sua sponte continuance outweighed the best interests of the public and the defendant in a speedy trial after considering the several factors set forth in 18 U.S.C. § 3161(h)(7)(B), including: (a) the complexity of this case due to the number of defendants—three at this time—and the nature of the prosecution, which made it unreasonable to expect adequate preparation for trial as previously scheduled, particularly with respect to Chavis's newly appointed defense counsel; (b) failing to continue the jury trial under the circumstances presented was likely to result in a miscarriage of justice, inasmuch as proceeding to trial as previously scheduled might operate to deprive Chavis of his right to the effective assistance of counsel; and (c) failing to continue the jury trial under the circumstances presented would deny defense counsel the reasonable time necessary for effective preparation, taking into account due diligence. We further note that Attorney Rude had filed a motion to withdraw on June 9, 2026, based upon a scheduling conflict—at the time he accepted the appointment, he was unaware that his client would not agree to a motion for continuance of the previously scheduled June trial

*(continued on next page)*

In addition, we note that at least one of Chavis's codefendants has filed pretrial motions which tolled—and continue to toll—the statutory speedy trial clock for periods overlapping those set forth above.

Based on the foregoing, at this time, we find that *no unexcluded time has accrued* toward the Speedy Trial Act clock for this case.

### B. Sixth Amendment Speedy Trial Clause

The defendant's motion and opening brief did not raise a Sixth Amendment speedy trial violation claim. In its opposition brief, however, the government touched upon the issue unprompted, arguing that the defendant had not only failed to establish a statutory speedy trial violation, but he had failed to establish a constitutional violation as well. In his original and amended reply briefs, the defendant responded to the government's arguments on this issue.

"Compliance with the seventy-day schedule set forth in the Speedy Trial Act does not bar a claim under the Sixth Amendment . . . ." *Wall v. United States*, 258 F. Supp. 3d 437, 445 n.2 (D. Del. 2017). But, as the Third Circuit has recognized, "it will be an unusual case in which the

---

date, during which period Attorney Rude was not available for trial. Following the motion hearing at which the court sua sponte continued the jury trial, Attorney Rude withdrew his motion to withdraw.

Speedy Trial Act is followed but the Constitution violated. In other words, a violation of the Speedy Trial Act is generally a necessary condition for a holding that there has been a Constitutional violation." *United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *4 (3d Cir. May 11, 2023) (citations, internal quotation marks, and brackets omitted).

"The United States Supreme Court has adopted a flexible balancing test to adjudicate alleged violations of the Sixth Amendment Speedy Trial Clause." *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993). The four factors to be considered are: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "All factors must be considered and weighed as no one factor is dispositive or 'talismanic.'" *Hakeem*, 990 F.2d at 759 (quoting *Barker*, 407 U.S. at 533).

"The threshold question under *Barker* is whether the length of delay was sufficient to trigger analysis of the remaining factors. This involves a 'double enquiry.'" *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014) (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and

> trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett*, 505 U.S. at 651–52 (citations omitted). "In other words, a court first decides whether the delay is long enough that it should trigger analysis of other *Barker* factors. If it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors." *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citation omitted). Under this first *Barker* factor, "[t]he length of delay is measured 'from the date of arrest or indictment, whichever is earlier, until the start of trial.'" *Claxton*, 766 F.3d at 294 (quoting *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009)). The Third Circuit has "previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors." *Battis*, 589 F.3d at 678 (citing *Hakeem*, 990 F.2d at 760).

In this case, the original indictment against Chavis was returned

by federal grand jury on June 10, 2025, and trial is currently scheduled to commence on August 27, 2026, fourteen months and seventeen days after the date of the defendant's formal accusation.[5] Because this period of time exceeds the fourteen-month threshold recognized in *Hakeem*, we are required to consider and balance the remaining *Barker* factors. This first factor weighs in Chavis's favor, albeit only somewhat as the anticipated delay is only slightly longer than the fourteen-month threshold.[6]

The second *Barker* factor is the reason for the delay. Our inquiry here is "whether the government or the criminal defendant is more to blame for the delay." *Doggett*, 505 U.S. at 651.

> Delays attributable to the Government fall into one of three categories: [(1)] intentional delay intended to hamper the defense which weighs heavily against the Government, [(2)] more neutral delay including delay attributable to negligence and crowded court dockets

---

[5] Chavis was arrested by federal authorities on October 29, 2026, and made his initial appearance before a federal magistrate judge on October 30, 2026. In his briefs, Chavis notes also that he was first arrested by state authorities on June 18, 2025, on parallel state charges, but, when advised of his state arrest, federal authorities declined to execute the federal arrest warrant at that time. These events postdating the federal indictment, however, are immaterial to our consideration of this first, threshold *Barker* factor.

[6] As of this writing, the delay is less than fourteen months, with trial yet a month away.

>which weighs less heavily against the Government, and [(3)] justifiable delay by the Government, such as to procure a missing witness.

*Judge v. United States*, 119 F. Supp. 3d 270, 294 (D.N.J. 2015) (citing *Battis*, 589 F.3d at 679); *see also Claxton*, 766 F.3d at 294–95; *Hakeem*, 990 F.2d at 766. "By contrast, delay caused by the defense weighs against the defendant." *Claxton*, 766 F.3d at 295 (quoting *Battis*, 589 F.3d at 680); *see also Hakeem*, 990 F.2d at 766. This includes delay caused by the defendant, by his counsel, and by his co-defendants or their counsel. *Judge*, 119 F. Supp. 3d at 294; *see also Claxton*, 766 F.3d at 295; *Battis*, 589 F.3d at 679–80. "In evaluating this factor, we subtract the amount of delay caused by the defendant from the delay caused by the Government." *Battis*, 589 F.3d at 680.

The original fourteen-count indictment against eight defendants, including Chavis, was returned by the grand jury and filed under seal on June 10, 2025. Over the next two weeks, six of Chavis's co-defendants made their initial appearances with respect to the original indictment.[7] Initially, these co-defendants were each scheduled separately for jury

---

[7] Jerrod Curtis, Jonathan Bishop, Joshua Forrester-Westad, Francis Vasquez-Familia, Leroy Scriven, and Carlos Vasquez.

trial dates in August and September based on the date of their initial appearances. A fifteen-count superseding indictment, which expanded the full roster of defendants to nine, was returned by the grand jury and filed under seal on June 24, 2025. Ultimately, by the end of July, a seventh co-defendant had made his initial appearance,[8] and the court had—through a series of orders granting motions to continue separately filed by the several co-defendants—scheduled all active defendants for a single joint jury trial scheduled to commence on October 6, 2025.

In August and September, several of Chavis's co-defendants filed motions to continue the joint jury trial,[9] and the government filed its own motion to continue with respect to one co-defendant who had declined to consent to a continuance.[10] Ultimately, by the end of September, the court had—through a series of orders granting each of those motions—rescheduled the defendants for two joint jury trials set to commence on November 10, 2025, and December 8, 2025.[11]

---

[8] Reneard Harris.

[9] Vasquez-Familia, Harris, Forrester-Westad, Scriven, and Vasquez each filed a motion to continue.

[10] Curtis.

[11] Scriven, Curtis, and Vasquez were scheduled for a November 10 trial, and the other four were scheduled for a December 8 trial.

In mid-October, Chavis's eighth co-defendant[12] made her initial appearance and was scheduled for the joint jury trial set to commence on December 8, 2025.

On October 22, 2025, the court granted a motion by the government to continue the jury trial with respect to co-defendant Curtis, rescheduling him for joint jury trial set to commence on December 8, 2025. On October 27, 2025, the court granted motions to continue filed by Vasquez and Scriven, rescheduling Vasquez for the joint jury trial set to commence on December 8, 2025, and rescheduling Scriven for a jury trial set to commence on December 15, 2025.

On October 30, 2025, defendant Chavis made his initial appearance in this case before a federal magistrate judge, and he was scheduled for a joint jury trial set to commence on December 15, 2025. That same day, two of his co-defendants, Vasquez-Familia and Harris, filed for a further continuance of the joint jury trial scheduled to commence on December 8, 2025.

On November 3, 2025, a third co-defendant, Forrester-Westad, filed a similar motion to continue. Later that same day, the court held a

---

[12] Pamela Montano.

scheduling conference with respect to this case. The next day, the court entered a scheduling order granting the defendants' three outstanding motions to continue and consolidating the cases against all nine defendants for a single joint jury trial set to commence on March 16, 2026.

On January 22, 2026, Chavis filed a motion for a 90-day continuance of the his jury trial. On January 23, 2026, one of his co-defendants, Forrester-Westad, filed a similar motion to continue the trial. On February 2, 2026, the court held a status conference, at which the government made a similar motion for a continuance with respect to all other defendants.[13] Later that same day, the court entered orders granting these motions to continue and rescheduling the joint jury trial to commence on June 26, 2026.

On March 9, 2026, Chavis filed the instant motion to dismiss the superseding indictment against him for violation of his speedy trial rights, together with a brief in support. On March 25, 2026, the government filed its brief in opposition to Chavis's motion to dismiss. On

---

[13] We note that the case against defendant Vasquez-Familia was severed from those against the other defendants on January 28, 2026, due to his status as a fugitive, which rendered him unavailable for trial.

April 2, 2026, Chavis filed his original reply brief. On June 25, 2026, Chavis filed his amended reply brief.

As discussed in the preceding section, on May 6, 2026, Chavis's counsel of record, Attorney Parkins, moved to withdraw based on a newly developed conflict of interest. On May 7, 2026, that motion was granted, and on May 11, 2026, Attorney Rotteveel was appointed to represent Chavis.

Shortly after his appointment, Attorney Rotteveel learned of a conflict of interest due to his representation of another client. While the other client was willing to waive the conflict, Chavis was not. Thus, on May 27, 2026, Attorney Rotteveel moved to withdraw based on this conflict of interest, and on May 29, 2026, that motion was granted. On June 3, 2026, less than thirty days before trial was scheduled to commence, Attorney Rude was appointed to represent Chavis.

On June 17, 2026, the court held a hearing on several pretrial motions that were pending.[14] At the motions hearing, the court sua

---

[14] The motions hearing originally had been scheduled for May 1, 2026. Due to an extension of the pretrial motions deadline on the motion of one of Chavis's co-defendants, the motions hearing date was rescheduled to May 29, 2026. It was then rescheduled once again, to June 17, 2026, due to the withdrawal of Chavis's counsel, Attorney Rotteveel.

sponte raised the necessity of another continuance of the joint jury trial, primarily due to the recent appointment of new counsel to represent Chavis. In light of the nature and complexity of the case, the risk that proceeding to trial as scheduled might operate to deprive Chavis of his right to the effective assistance of counsel, and the need for his newly appointed counsel to have a reasonable amount of time to prepare an effective defense, the court continued the joint jury trial until August 27, 2026.

The original indictment in this case was filed on June 10, 2025. Within days of that filing, the first four co-defendants in this case made their initial appearances and were scheduled for the first joint jury trial date set in this case—August 18, 2025. While properly attributable to the government, this period of less than seventy days[15] is the ordinary pretrial investigation and preparation period common to all federal prosecutions, and there is nothing in the record before us to suggest that the government did not act in good faith or with reasonable diligence to advance the case at that point. Thus, we find this initial period of 69 days to be a justifiable delay with no appreciable weight against the

---

[15] *Cf.* 18 U.S.C. § 3161(c)(1).

government.

These initial jury trial dates were continued several times on motions by Chavis's co-defendants, until a joint jury trial for all nine defendants was ultimately scheduled to commence on March 16, 2026. That trial date was then further continued until June 26, 2026, this time on Chavis's own motion to continue. Thus, we find this second period of 312 days attributable to the defense, rather than the government.

The final continuance at issue, from June 26, 2026, until August 27, 2026, was granted by the court sua sponte. But the ultimate cause of this delay—Chavis's recent change of counsel, which had been prompted by newly discovered conflicts of interest by his defense counsel—renders this period of 62 days attributable to the defense, rather than the government. *See Vermont v. Brillon*, 556 U.S. 81, 93–94 (2009) (delay caused by defendant's efforts to force withdrawal of defense counsel attributable to defendant); *United States v. Stanley*, 396 Fed. App'x 482, 485 (10th Cir. 2010) (delay caused by substitution of counsel weighed against defendant); *United States v. Rowland*, Crim. No. 18-579-2, 2022 WL 445769, at *3 (E.D. Pa. Feb. 11, 2022) (delay caused by defense counsel's conflict of interest attributable to defendant).

Accordingly, we find it clear that the entire period of delay at issue here is attributable to the defense, and thus the second *Barker* factor weighs heavily in favor of the government.[16]

The third *Barker* factor is whether Chavis asserted his speedy trial right in a timely and proper manner. "Although delay in asserting the constitutional right to a speedy trial does not constitute a waiver, 'failure to assert the right will make it difficult for the [defendant] to prove that he was denied a speedy trial.'" *Hakeem*, 990 F.2d at 764 (quoting *Barker*, 407 U.S. at 532). "When a defendant is represented by counsel, he should identify a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success. By contrast, informal correspondence to the court by a represented defendant is less convincing." *Battis*, 589 F.3d at 681 (citation omitted and internal quotation marks omitted).

Counsel for Chavis filed the instant motion to dismiss for speedy trial violations on March 9, 2026, approximately ten months after the

---

[16] Even if we were to treat the initial 69-day period and the final 62-day period as "neutral" delays attributable to the government, the delays caused by the defense would still *significantly* outweigh any delay caused by the government.

original indictment was filed. Although represented by counsel, Chavis also submitted informal pro se correspondence to the court asserting his right to a speedy trial: (1) a pro se "notice" dated January 26, 2026, and received by the court and filed on February 3, 2026; (2) a pro se letter to the presiding judge dated January 27, 2026, and received by the court and filed on February 3, 2026; and (3) a pro se letter to the presiding judge dated February 18, 2026, and received by the court and filed on February 26, 2026.

"Repeated assertions of the right [to a speedy trial] do not, however, balance this factor in favor of a [defendant] when other actions indicate that he is unwilling or unready to go to trial." *Hakeem*, 990 F.2d at 764 (citing *United States v. Loud Hawk*, 474 U.S. 302, 313–15 (1986)). These formal and informal assertions of the defendant's speedy trial rights are contradicted by his counsel's contemporaneous actions in this case. Just days before Chavis sent his first two informal letters to the court in January, his counsel filed a motion for a 90-day continuance of the joint jury trial then scheduled to commence on March 16, 2026, and that motion remained pending at the time when Chavis sent this informal correspondence. In support of the defendant's motion for a continuance,

- 23 -

defense counsel expressly stated that "[u]ndersigned counsel requires additional time to be able to review discovery, meet with the Defendant, and determine if motions need to be filed," and that "[a]dequate review of the discovery is necessary to ensure effective representation, identify potential pretrial motions, and prepare for trial." Doc. 268. Chavis's third informal letter and his formal motion to dismiss were filed just weeks after the court granted his motion for a continuance, during the very same 90-day period of delay his counsel had expressly requested to permit him to adequately prepare for trial. This record suggests that, notwithstanding his repeated assertions of speedy trial rights, Chavis was simply not ready to proceed to trial at that time, and we are therefore compelled to give these requests less or no weight. *See Battis*, 589 F.3d at 681 n.7; *Hakeem*, 990 F.2d at 764.

Under these circumstances, we find that the third *Barker* factor is neutral. Although the defendant asserted his speedy trial rights repeatedly over a short period of time, both formally and informally, those assertions were starkly inconsistent with his counsel's contemporaneous and successful efforts to obtain a 90-day continuance to permit him to adequately prepare a defense for trial.

The fourth *Barker* factor is prejudice, the "most important factor." *Hakeem*, 990 F.2d at 760. "[T]he burden of showing prejudice lies with the individual claiming the violation . . . ." *Id.* "The Supreme Court has outlined two ways in which a defendant can establish prejudice." *Battis*, 589 F.3d at 682.

First, a defendant can establish actual or specific prejudice by "affirmative proof of particularized prejudice" or "specifically demonstrable" harm. *See Doggett*, 505 U.S. at 655. The Supreme Court has "identified three types of harm that arise from unreasonable delay between formal accusation and trial: (1) 'oppressive pretrial incarceration;' (2) 'anxiety and concern of the accused;' and (3) 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence.'" *Claxton*, 766 F.3d at 296 (quoting *Doggett*, 505 U.S. at 654).

> Of the three types of prejudice, impairment of the accused's defense is the most serious. Credit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case. Prejudice that affects the defendant's ability to defend himself, though, "skews the fairness of the entire system."

*United States v. Wilson*, 216 F. Supp. 3d 566, 579 (E.D. Pa. 2016)

- 25 -

(citations omitted) (first citing *Barker*, 407 U.S. at 528; then citing *Hakeem*, 990 F.2d at 762; and then quoting *Barker*, 407 U.S. at 532).

Alternatively, "prejudice can be presumed if a sufficiently long delay is attributable to the government." *Id.* (citing *Doggett*, 505 U.S. at 658); *see also Doggett*, 505 U.S. at 555 ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). "[T]he Third Circuit has held that a delay of thirty-five months is sufficient to presume prejudice, but a delay of fourteen months is not." *Wilson*, 216 F. Supp. 3d at 579 (citing *Battis*, 589 F.3d at 683, and *Hakeem*, 990 F.2d at 764). Moreover, "[t]his presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government affirmatively proves that the delay left the defendant's ability to defend himself unimpaired." *Battis*, 589 F.3d at 682 (internal quotation marks and brackets omitted) (citing *Doggett*, 505 U.S. at 68 & n.1).

In this case, the total delay of fourteen months and seventeen days between indictment and trial, almost all of which is attributable to the defense rather than the government, "is insufficient to allow an inference of prejudice solely from the length of the delay." *Hakeem*, 990 F.2d at 764

- 26 -

(finding 14½ month delay not presumptively prejudicial); *see also Claxton*, 76 F.3d at 296–97 (finding 3½ year delay not presumptively prejudicial where defendant was free during the entire 19-month period attributable to the government).

The defendant has failed to adduce any affirmative proof of particularized prejudice or specifically demonstrable harm. Absent any evidence of substandard conditions,[17] a ten month period of pretrial detention does not demonstrate oppressive pretrial incarceration. *See Hakeem*, 990 F.2d at 761. Chavis's motion papers include a naked assertion of "significant anxiety, stress, and disruption as a result of the delay," Doc. 341, at 3, but "[v]ague allegations of anxiety are insufficient to state a cognizable claim [of actual prejudice]. . . . In order to reach that level, the [defendant] must produce evidence of psychic injury." *Hakeem*, 990 F.2d at 762; *see also United States v. Dreyer*, 533 F.2d 112 115–16 (3d Cir. 1976) (specific prejudice shown by evidence of severe mental disturbance, including years-long psychiatric treatment for acute anxiety and depression and hospitalization for a suicide attempt); *United States*

---

[17] Chavis has not alleged, much less shown, any substandard conditions of confinement.

*v. Green*, 471 F. Supp. 3d 577, 603 (M.D. Pa. 2020) (finding vague allegations of anxiety, concern, and deteriorating health insufficient). His amended reply alleges that "his ability to present a defense has been frustrated with the passage of time," suggesting that the post-indictment delay in his arrest compromised defense counsel's ability to contact and interview unspecified witnesses for potentially exculpatory information when their memories were "freshest," Doc. 446, at 5, but "[g]eneral allegations that witnesses' memories have faded are insufficient to create prejudice, at least absent extreme delay . . . or . . . special circumstances." *Hakeem*, 990 F.2d at 763. Finally, Chavis has argued that his delayed arrest by federal authorities disrupted his participation in a state court sponsored drug rehabilitation program, Doc. 317, at 6; Doc. 341, at 4; Doc. 446, at 4–5, but ineligibility for a state criminal justice placement or program because of the federal charges underlying a speedy trial claim is not the sort of prejudice cognizable under the Sixth Amendment. *See United States v. Robinson*, 455 F.3d 602, 609 (6th Cir. 2006).

Accordingly, we find that the defendant has failed to demonstrate any actual or presumptive prejudice as a result of the delay at issue in this case, and thus the fourth *Barker* factor—the "most important"

factor—weighs in favor of the government.

In weighing the *Barker* factors, we note that, although the threshold length-of-delay factor—whether the delay was sufficient to trigger the *Barker* analysis—weighs somewhat in the defendant's favor, the assertion-of-speedy-trial-rights factor is neutral, and the reason-for-the-delay and prejudice factors both weigh in favor of the government, and heavily so with respect to the reason for the delay. Based on our consideration of these four factors, we conclude that the balance weighs in favor of the government, and Chavis has not demonstrated a Sixth Amendment speedy trial violation.

### C. Conclusion

For the foregoing reasons, the defendant's motion to dismiss (Doc. 316) will be denied.

An appropriate order follows.

Dated: July 29, 2026          *s/Joseph F. Saporito, Jr.*
                              JOSEPH F. SAPORITO, JR.
                              United States District Judge